THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL AARON, et al.,

Petitioners,

v.

VALVE CORPORATION,

Respondent.

No. 2:25-CV-02657

REPLY IN SUPPORT OF PETITIONERS' RENEWED MOTION TO COMPEL ARBITRATION

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL
ARBITRATION
(NO. 2:25-cv-02657)

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

## **INTRODUCTION**

Valve's Opposition ("RMTC Opp."), Dkt. No. 35[1] does not rebut Petitioners' evidence that they and Valve are parties to the Operative SSA in force when they filed their arbitrations, an agreement Valve repeatedly enforced for nearly identical claims. Instead, Valve makes a contract modification argument that fails for four independent reasons. First, assuming every Petitioner is bound by the Amended SSA, a proposition without supporting evidence, the plain language of the Amended SSA applies only prospectively to disputes "commenced and maintained" after the amendment, not Petitioners' previously filed arbitrations. Second, the Operative SSA's survival clause preserves the arbitration agreement beyond termination, insulating already-filed claims from subsequent amendment. Third, Valve imposed the amendment via an improper unilateral modification violating the implied covenant of good faith and fair dealing. Fourth, the amended dispute resolution provisions are unconscionable as applied to pending claims under Ninth Circuit precedent. Finally, Valve has not shown that any Petitioner agreed to the modification—nor can it ever show effective acceptance, given the deceptive notices accompanying the Amended SSA.

Valve believes it can cycle consumers between arbitration and court, forcing them to endlessly restart without ever reaching the merits. Neither the FAA nor basic contract law permit such an absurd result. The Court should grant Petitioners' Motion and order Valve to arbitrate under the Operative SSA.

## **ARGUMENT**

**I.    PETITIONERS PROVED A VALID ARBITRATION AGREEMENT, AND VALVE'S CONTRARY POSITION IGNORES ITS OWN ADMISSIONS**

Valve admits that "Steam users are required to agree to Valve's Steam Subscriber

---

[1] Unless stated otherwise, all internal citations are omitted and emphasis is added. "RMTC" refers to the Renewed Mot. to Compel Arbitration, dated March 27, 2026, Dkt No. 25; "Pet" refers to Petitioners' First Amended Petition to Compel Arbitration, dated March 27, 2026, Dkt. No. 24; "Dweck Decl." refers to the Decl. of Morris Dweck In Support of Pet'rs' Renewed Mot. to Compel Arbitration, dated March 27, 2026, Dkt No. 26 and "Supp. Dweck Decl." refers to the Supplemental Decl. of Morris Dweck In Further Support of Pet'rs' Renewed Mot. to Compel Arbitration, filed concurrently herewith.

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL
ARBITRATION
(NO. 2:25-cv-02657) - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

Agreement," and "does not dispute that account holders associated with the identified Steam IDs agreed to the Superseded SSA." RMTC Opp. 1, 8. Those admissions are crucial.

Petitioners identified the Operative SSA containing the arbitration clause and submitted Steam identifiers with a supporting declaration linking them to Petitioners' accounts. *See* Pet., Ex. A. Valve admits those identifiers are for valid Steam accounts whose holders agreed to the Operative SSA. RMTC Opp. 8. Yet Valve complains that it cannot determine from its records whether any account belongs to a particular Petitioner because it did not require identifying information at account creation. *Id*.

Valve offers no evidence that any identified account does not belong to a Petitioner. This does not create a genuine dispute over assent. General denials of fact are insufficient to defeat arbitration. *See, e.g., Kim v. Tinder, Inc.*, 2018 WL 6694923 at *2 (C.D. Cal. July 12, 2018) ("In light of [movant]'s evidence that [nonmovant] consented to the arbitration agreement, the burden shifted to [nonmovant] to affirmatively rebut such evidence . . . . [V]ague requests to pursue unspecified discovery are insufficient as a matter of law to defeat a motion to compel arbitration.")

Nor do Valve's cited authorities compel a different result. In *L'Occitane, Inc. v. Zimmerman Reed LLP*, No. CV 24-1103 PA (RAOx), 2024 WL 2227182 (C.D. Cal. Apr. 12, 2024), the claimants failed to submit any admissible evidence linking them to an arbitration clause, and the court denied arbitration because claimants had not shown that the "browsewrap" agreement "'evidence[d]' [a] transaction" in interstate commerce. 2024 WL 2227182, at *3-4. Here, Petitioners submitted concededly valid evidence of Steam account ownership. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) concerned scope, not identity: the Ninth Circuit held that Walmart's online Terms of Use did not displace a separate in-store tire-service agreement. 57 F.4th at 682. By contrast, Valve has successfully argued that the Operative SSA applies to the underlying claims. *See generally Wolfire Games, LLC et al. v. Valve Corporation*, No. C21-0563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25 2021) (granting Valve's motion to compel Steam users' antitrust claims to AAA arbitration). Petitioners submitted account-specific identifiers, a

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL
ARBITRATION
(NO. 2:25-cv-02657) - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

declaration linking those identifiers to their accounts, and Valve admits account-level assent—more than sufficient to satisfy their burden. *See Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 619 (7th Cir. 2024) ("consumers could have submitted almost anything to meet their burden…").

Because Petitioners have established an agreement to arbitrate and Valve has not rebutted that showing, Valve's remaining arguments are delegated to the AAA arbitrator. *See* Pet. Ex. F at § 11.A (incorporating AAA rules which delegate arbitrability and enforceability to the arbitrator); RMTC 14; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate . . . ."). This Court need not address them, but they are without merit regardless.

## II.    IT IS VALVE'S BURDEN TO PROVE ASSENT TO THE AMENDED SSA

After admitting that the identified Steam account holders agreed to the Operative SSA, Valve contends Petitioners failed to prove that they were "not thereafter bound to the Current SSA." RMTC Opp. 2, 8. That improperly shifts the burden to Petitioners.

"Once it is established that a valid agreement to arbitrate exists, the burden shifts to the party seeking to avoid arbitration to show that the agreement should not be enforced." *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 485 F. Supp 2d 1168, at 1178 (N.D. Cal. Sept. 11, 2020) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000)). Thus, if Valve contends that the Operative SSA is unenforceable because it was later superseded, Valve must prove it. *See id.; see also, e.g., Wagman -Geller  v. Wells Fargo Bank, N.A.,* 2026 WL 899430 at *5 (S.D. Cal Mar. 30, 3036) ("The party seeking to compel arbitration bears 'the burden of demonstrating the existence of a valid arbitration agreement' . . . . Once that burden is satisfied, the burden shifts to the opposing party to establish" a defense) (*citing Norcia v. Samsung Telecomm. Am.*, 845 F.3d 1279, 1283 (9th Cir. 2017) and *Lim v. TForce Logistics*, LLC, 8 F.4th 992, 999 (9th Cir. 2021)); *Kim*, 2018 WL 6694923 at *2) ("In light of [movant]'s evidence that Plaintiff consented to the arbitration agreement, the burden shifted to [nonmovant] to affirmatively rebut such evidence.

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL ARBITRATION
(NO. 2:25-cv-02657) - 3

[Nonmovant] failed to do so."). Valve offers only generalized evidence about the Amended SSA's rollout and how users allegedly "could assent." RMTC Opp. 11. Valve offers no record showing that any Petitioner clicked "Accept Updated SSA" or continued use after the update. Valve simultaneously argues that Petitioners' Steam account identifiers are *insufficient* to show agreement to the Operative SSA, and asks this Court to conclude the *same* Petitioners agreed to the Amended SSA on *no specific evidence whatsoever.* Accordingly, Valve's argument fails at both steps.

## III.    THE AMENDED SSA DOES NOT REQUIRE WITHDRAWAL OF PENDING AAA DEMANDS

While there is no evidence in the record that any Petitioner agreed to the Amended SSA, even assuming they did, it does not apply to pending claims. Arbitration turns on what the parties agreed to, not a drafter's unilateral attempt to change the forum after arbitration is invoked. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) ("Given that arbitration agreements are simply contracts, the first principle that underscores all of our arbitration decisions is that arbitration is strictly a matter of consent.") (cleaned up). Courts do not presume retroactive divestiture of an already-selected forum absent clear language. *See Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000) (relying on express retroactivity language to find retroactive application of a change of forum implemented *before* the initiation of the action in question). The Amended SSA's dispute language is prospective: new disputes must be filed and prosecuted ("commenced **and** maintained") in court. Reading "maintained" to reach disputes already commenced rewrites the provision into the disjunctive. *See Ball v. Stokely Foods*, 221 P.2d 832, 835 (Wash. 1950) ("[E]very word" in a contract "must be given a meaning and effect whenever reasonably possible"). The following parenthetical ("including any dispute or claim that arose before . . . ", RMTC Opp. 16) supports Petitioners' reading: it applies to disputes that *accrued* prior to the SSA but were not *commenced*.

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL
ARBITRATION
(NO. 2:25-cv-02657) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

Additionally, Section 9.D of the Operative SSA provides that the arbitration agreement "will survive any expiration or termination of this Agreement." Valve's response is that "[t]he survival provision from the Superseded SSA no longer applies" because the Amende SSA terminated it. RMTC Opp. 20. Valve's argument is circular. Valve must demonstrate that the Amended SSA validly supersedes the Operative SSA as to already commenced arbitrations, or the survival clause controls.

If the Court holds that the text is ambiguous as applied to pending arbitrations, "the reviewing court construes ambiguities . . . against the drafter"—here, Valve. *Mendez v. Palm Harbor Homes, Inc.*, 45 P.3d 594, 602 (Wash. 2002). Valve's own notice reinforced that forward-looking reading, telling Petitioners that "the updated SSA now provides that any disputes are to go forward in courts instead of arbitration . . . ." *See Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1465 (2012) ("A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims."); *accord Anderson v. Binance*, 20-cv-02803 (ALC), 2026 WL 538293, at *9 (S.D.N.Y Feb. 26, 2026) (same); RMTC Opp. 10. The notice did not inform Petitioners that continuing to access their purchased content would constitute agreement to abandon pending arbitrations and start over in court.

Valve's authorities do not supply the missing language Valve asks this Court to insert. The agreement in *SCPS* expressly applied to "past, **pending**, or future disputes"—language Valve did not include. *SCPS LLC v. Kind Law*, No. CV25-3255-MWF, 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 8, 2026). *Pilon v. Discovery Communications*, LLC, 769 F. Supp. 3d 273 (S.D.N.Y. 2025) and *Trudeau v. Google LLC*, 816 F. App'x 68, 70 n.1 (9th Cir. 2020) involved agreements reaching pre-existing (but not pending) claims on materially different records, and in both, claims were filed after the amendments. *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859 (9th Cir. Mar. 3, 2026) (mem.) and *Majidi-Ahy v. ClassPass, Inc.*, 2026 WL 585465 (C.D. Cal. Feb. 11, 2026) are similarly unpersuasive. *Tile* involved a pre-suit change in arbitration venue and the claims were filed *after*

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL
ARBITRATION
(NO. 2:25-cv-02657) - 5

the amendment; *ClassPass* addressed pop-up notice adequacy. Neither involved rescission of arbitration after claims were already on file.

Valve's reading would also produce an absurd result. Under its theory, a company could force claimants to restart in a new forum at any stage, even after a final award. Courts avoid constructions "which would lead to an absurd conclusion, or render the [contract] nonsensical or ineffective." *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 726 P.2d 439, 443 (1986).

Valve's merger-clause argument also fails. RMTC Opp. 19-20 (claiming the Operative SSA no longer controls). The merger clause does extinguish accrued rights, especially where "assent" is manufactured through a unilateral mechanism implying acceptance from failure to cancel under threat of forfeiture. *See Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 at 964-66 (2015); *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680-83 (9th Cir. 2024).

## IV.    VALVE MADE AN IMPROPER AND INEFFECTIVE UNILATERAL MODIFICATION IN VIOLATION OF THE IMPLIED COVENANT

### A.    The Amended SSA was Imposed Via Unilateral Modification

Valve argues the parties mutually modified the SSA but presents no evidence any Petitioner expressly agreed. *See Alaska Pacific Trading Co. v. Eagon Forest Products, Inc.*, 933 P.2d 417, 420 (Wash. App. 1997) ("[M]utual assent and a meeting of the minds is required to modify a contract . . . Because the law requires mutual assent, [a party's] mere silence is not sufficient to establish a material issue of fact about modification.") This alone merits rejection of Valve's modification arguments. *See generally infra* § II.

Even if Valve could show any Petitioner agreed, it clearly invoked the Operative SSA's *unilateral* modification provision. Section 8 of the operative SSA distinguishes between "Mutual Amendment" by "explicit consent" and "Unilateral Amendment" in Valve's "sole discretion," with acceptance deemed from "failure to cancel" and cancellation/ceasing use as the user's "only remedy" without refund. Valve cannot claim the modification was "mutual" while relying on the unilateral-amendment mechanism. *See* RMTC Opp. 5-6 (citing unilateral amendment provisions).

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL ARBITRATION
(NO. 2:25-cv-02657) - 6

Valve's reliance on cases enforcing updated consumer terms through "continued use" misses the mark. RMTC Opp. 15-6 (citing *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847 (W.D. Wash. 2023); *Search v. Bank of Am., N.A.*, 2012 WL 4514285 (W.D. Wash. Oct. 2, 2012); *In re Amazon Prime Video Litig.*, 765 F. Supp. 3d 1165 (W.D. Wash. 2025)). Those decisions address whether revised terms apply to future use where users can reject changes without punitive forfeiture. Here, Valve impermissibly deployed its "update" to stop pending arbitrations. *See Peleg*, 204 Cal. App. 4th at 1465; *Close v. Penney Opco LLC*, 787 F. Supp. 3d 1166, at 1172 (W.D. Wash. 2025).

Valve's theory is doubly flawed: it relies on a unilateral-amendment provision while labeling the result "mutual" to avoid Washington law's constraints on unilateral modifications. *Goggins v. Amazon.com Inc.*, 2025 WL 2782872 (W.D. Wash. Sep. 30, 2025), cited by Valve, did not hold that a drafter may retroactively terminate an already-commenced proceeding through unilateral modification. There, the court analyzed the amendment as a unilateral modification despite multiple assenting clicks and held the amendment clause was "not itself dispositive" because unilateral modifications require notice and assent under Washington law. *Goggins*, 2025 WL 2782872, at *6.

### B.     Valve's Notice Was Insufficient

Valve tried to force Petitioners to "accept" the Amended SSA through emails, pop-ups, and blog posts that misled users into thinking the changes applied only prospectively. *See* RMTC Opp. 10 (quoting notice stating the Amended SSA "require[s] that all disputes and claims proceed in court and not in arbitration…" and that such court proceedings would be the next step "if informal resolution d[oes] not work."). Valve never informed Petitioners that it intended to force abandonment of already-filed arbitrations, instead using forward-looking language about what would happen if informal resolution processes *Petitioners had already completed* proved unsuccessful. *Id.* Such notice is facially insufficient. "[B]urying the true nature of this change" "in

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

the midst of ongoing litigation" is impermissible. *Heckman v. Live Nation Ent., Inc.* 686 F. Supp. 3d 939, 953 (C.D. Cal. 2023), aff'd, 120 F.4th 670 (9th Cir. 2024).[2]

### C.     Valve's Unilateral Modification Violated The Implied Covenant

Under Washington law, the implied covenant of good faith and fair dealing ("Covenant") requires "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Edmonson v. Popchoi*, 256 P.3d 1223, 1227 (Wash. 2011). Valve did the opposite: for years, it compelled customers to arbitrate and then invoked its amendment power to eliminate the arbitral forum after Petitioners filed AAA demands.

Valve first contends the Operative SSA's amendment clause precludes any Covenant claim, but its theory would nullify the Covenant wherever a drafter reserves modification discretion. Washington law holds the opposite: the Covenant governs how such discretion is exercised. *Cobb* confirms that "the implied covenant of good faith and fair dealing prohibits a party from making unilateral changes to an arbitration agreement that apply retroactively to accrued or known claims." 233 Cal. App. 4th at 966. Second, Valve suggests Petitioners must identify a specific breached term (RMTC Opp. 15), but "breach of a specific provision of the contract is not a necessary prerequisite" to a Covenant claim. *Rekhter v. Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (2014). Third, Valve argues Petitioners seek to "inject substantive terms" (RMTC Opp. 12), but Petitioners argue only that Valve could not exercise its amendment power to deprive them of the benefit of their bargain after arbitrations were filed. *Edmonson*, 256 P.3d at 1227 (The Covenant requires "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.") (quoting Restatement (Second) of Contracts § 205 cmt. a); *see also Rekhter*, 323 P.3d at 1042 (discretion must be exercised reasonably and in good faith). Petitioners, "who do not appear to be time travelers, could not unwind that transaction to avoid an unconscionable contract provision added after the fact." *Beckford v. Children's Grp.,*

---

[2] Although *Heckman* arose under California law, its reasoning is consistent with the same contract principles under Washington law, which likewise prohibits unconscionable unilateral amendments with retroactive effect. *See, e.g., Badgett v. Sec. State Bank,* 807 P.2d 356, 359 (Wash. 1991).

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Inc.*, No. 24-CV-06468-CRB, 2025 WL 660051, at *9 (N.D. Cal. Feb. 28, 2025), *reconsideration denied*, No. 24-CV-06468-CRB, 2025 WL 1207541 (N.D. Cal. Apr. 25, 2025).

Washington courts apply the covenant where there is an imbalance of discretion: "when a party has discretion over a future contract term, it has an implied duty of good faith and fair dealing in setting and performing that contractual term." *Rekhter*, 323 P.3d at 1042; *see also Cobb*, 233 Cal. App. 4th at 966 (rejecting retroactive application of unilateral amendment changing forum for pending claims); *Heckman,* 120 F.4th at 680-83 (noting procedural and substantive unconscionability of similar amendment). Petitioners do not argue consumer contracts can never be modified—only that they cannot be modified to strip Petitioners of the benefit of their bargain after performance has begun, particularly when the only way to reject any change would impose an economic penalty on the weaker party.  The implied covenant cabins such exercise of Valve's unilateral amendment power. *Rekhter*, 323 P.3d at 1042 ("[W]hen a party has discretion over a future contract term, it has an implied duty of good faith and fair dealing in setting and performing that contractual term.").

Valve's dismissal of Petitioners' "hypotheticals" fares no better. RMTC Opp. 16. Petitioners' examples illustrate the absence of any limiting principle: Valve's reading allows it to nullify any proceeding, at any stage, by "updating" the dispute-resolution clause. Courts do not presume such drastic, one-sided readings. Valve's current preference for "one forum" (RMTC Opp. 15-6) does not supply any limiting principle. The switch between representative action and individual arbitration is itself problematic (*see Heckman*, 686 F. Supp. 3d at 953 (holding a company's unilateral "significant change in the parties' agreement from individual, bilateral arbitration . . . in the midst of ongoing litigation" was unconscionable) and nothing stops Valve from switching back to arbitration if courts start ruling in a way it dislikes.

### D.    The Amended SSA Is Unconscionable

The Amended SSA is unconscionable. Procedurally, the amendment was unilaterally imposed on a take-it-or-leave-it basis while arbitrations were pending—mirroring the "extreme"

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL
ARBITRATION
(NO. 2:25-cv-02657) - 9

procedural unconscionability in *Heckman*. 120 F.4th at 682-83. Substantively, the amendment would let Valve switch forums whenever it faced unfavorable circumstances, granting unilateral control over dispute outcomes—"blatantly and excessively" one-sided under Washington law. *See Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 767 (Wash. 2004).

Valve's arguments in response are unpersuasive. First, Valve contends that providing "30 days' notice" and allowing users to "discontinue use or delete their accounts" gave Petitioners a "genuine choice." RMTC Opp. 3, 20-1. Putting aside Valve's misleading UI rhetoric, this misses the point. Notice cannot cure procedural unconscionability where the amendment was imposed mid-dispute under threat of forfeiture. *Heckman*, 120 F.4th at 681 (holding retroactive modification "procedurally unconscionable to an extreme degree" even with notice). Users could not reject the change while retaining access to purchased content—economic coercion, not meaningful assent.

Second, Valve argues that users "forfeited nothing" because Steam users purchase only a "license" rather than "title or ownership." RMTC Opp. 20. That distinction does not make the choice less coercive; cancellation deprives users of the paid-for access Valve sold them. Washington unconscionability doctrine turns on meaningful choice, not formalistic labels. *See Zuver*, 103 P.3d at 759-61 (procedural unconscionability focuses on whether "in truth a meaningful choice existed").

Similarly, Valve's reliance on *Bassett v. Elec. Arts Inc.*, No. 13-cv-04208 (MKB), 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015) is misplaced. Valve argues that because video games are "nonessential recreational activities," consumers can simply forgo them, so unconscionability is not implicated. RMTC Opp. 21. But to the extent *Bassett*, interpreting California law, stands for such a principle, it conflicts with California authority. "[W]hile the nonessential nature of recreational activities is a factor to be taken into account in assessing whether a contract is oppressive, it is not necessarily the dispositive factor." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 822 (2010) (citing *Szetla v. Discover Bank*, 97 Cal. App. 4th 1094 (2002)).

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL
ARBITRATION
(NO. 2:25-cv-02657) - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

*Heckman* involved plausible allegations of market dominance in a recreational activity (live concerts), as Petitioners allege here. Where monopoly power exists, the resulting "absence of meaningful choice" renders a contract unconscionable, and that the product "is arguably a nonessential recreational activity does not alter this conclusion." *Heckman*, 686 F. Sup. 3d at 952, 952 n.7.

Valve's other out-of-jurisdiction cases are also unavailing. *Pilon* concerned Discovery+, a "month-to-month" streaming "subscription" governed by New York law. Unlike *Pilon*'s continuing subscription, Petitioners faced loss of valuable Steam licenses, and any assent was coerced, not mutual. Further, *Pilon* recognizes "it is a basic principle of contract law that parties to a contract cannot prohibit their own ability to validly modify their contract sometime in the future." *Pilon,* 769 F. Supp. 3d at 295. Here, the issue is not the abstract power to modify, but whether Valve obtained valid assent to a forum change after claims were filed.

Valve's singling out of Ryan Lally as proof of "genuine choice" is self-defeating. Valve points to two users (out of approximately 70,000 individuals in just one mass arbitration, *see In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW, Dkt. No. 467, at 2(W.D. Wash. June 11, 2025)) who gave up their accounts to continue arbitrations, but this anecdote underscores the one-sidedness of Valve's approach. Mr. Lally was forced to seek sanctions because Valve left him without a workable arbitral forum *despite* his no longer using Steam. *Id.*

E.    **Valve's Violation of Rule 4.2 Underscores That Notice Was Ineffective And It Operated In Bad Faith**

Rule 4.2 would be implicated if Petitioners' counsel emailed Valve's CEO directly offering to arbitrate these disputes. *See* Wash. Rules of Prof. Conduct R. 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter"). Petitioners' counsel would likewise violate Rule 4.2 by drafting that email and asking Petitioners to send it directly to Valve's CEO. *See id.*; *id.,* cmt. 4 ("A lawyer may not make a communication prohibited by this Rule through the

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

acts of another."); Model Rules of Pro. Conduct r. 8.4 ("It is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.").That is essentially what Valve did here.

Valve's direct-to-consumer amendment pushing a forum-stripping "update" to represented claimants during active arbitrations violates Rules 4.2 and 8.4. Valve knew of the claims and knew Petitioners were represented. Dweck Decl. Ex. 5. Rules 4.2 and 8.4 are still implicated if the client sends communications on counsel's behalf, and in-house counsel remain bound by the rules of professional conduct. *See* Wash. Rules of Prof. Conduct R. 4.2 and 8.4; Wash. Rules of Prof. Conduct R. 4.2 cmt. 4. Notifying Petitioners' counsel as an afterthought does not cure the violation. Dweck Decl. ¶¶ 26-8, Ex. 4.

**F.      Valve's "Lack of Authorization" Attack Is Speculative, Irrelevant to § 4, and Grossly Disproportionate**

Valve's suggestion that Petitioners' counsel lacked authorization to file this Petition is unmoving. Petitioners hired counsel to pursue their claims to resolution; that three passed away since filing demands two years ago only reflects Valve's obstructiveness.

Valve's litigation-funding claims cite a single UCC filing statement that does not mention Valve and which was terminated prior to the filing of the original Petition, a fact Valve seems to have intentionally omitted. *See* Resp't Valve Corp.'s Opp. to Pet'rs' Mot. to Compel Arbitration, dated Feb. 27, 2026, Dkt No. 18. at 23-4; Supp. Dweck Decl. Exs. 3, 4. When Petitioners represented that the Bench Walk relationship—which started and ended before the original Petition—had no connection to these proceedings, Valve renewed the argument while omitting the termination statement. Supp. Dweck Decl. Exs. 1, 2, 5.[3] Valve's misrepresentation of key facts only underscores why the Court should grant the requested stay and injunction so arbitrations can proceed without collateral litigation.

---

[3] The original Opposition also misidentified the entity involved in an apparent attempt to link this Petition to other litigation.

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL ARBITRATION
(NO. 2:25-cv-02657) - 12

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant Petitioners' Motion to Compel Arbitration, order Valve to arbitrate Petitioners' claims before the AAA in accordance with the Operative SSA, and stay this action pending completion of arbitration.

DATED this 24th day of April, 2026.

BYRNES KELLER CROMWELL LLP
By: */s/* Bradley S. Keller

By: */s/* Jofrey M. McWilliam
  Bradley S. Keller, WSBA #10665
  Jofrey M. McWilliam, WSBA #28441
  bkeller@byrneskeller.com
  jmcwilliam@byrneskeller.com
  1000 Second Avenue, 38th Floor
  Seattle, Washington 98104
  Email: bkeller@byrneskeller.com
      jmcwilliam@byrneskeller.com
  Telephone: (206) 622-2000

LABATON KELLER SUCHAROW LLP
  Jonathan D. Waisnor, NYBA
  #5137302*(Pro Hac Vice Pending)*
  Jonathan Gardner, NYBA #2384394
  *(Pro Hac Vice Forthcoming)*
  Morris Dweck, NYBA # 5344627
  *(Pro Hac Vice Pending)*
  140 Broadway, 34th Fl.
  New York, NY 10005
  Telephone: (212) 907-0700
  Facsimile: (212) 818-0477
  jwaisnor@labaton.com
  jgardner@labaton.com
  mdweck@labaton.com

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL
ARBITRATION
(NO. 2:25-cv-02657) - 13

**CERTIFICATION:** The above signature also certifies that this memorandum contains 4,191 words, in compliance with the Local Civil Rules.

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL
ARBITRATION
(NO. 2:25-cv-02657) - 14

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

DATED: April 24, 2026

/s/ Jonathan D. Waisnor
Jonathan D. Waisnor

REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL
ARBITRATION
(NO. 2:25-cv-02657) - 15

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000